[No. 16150-8-II.   Division Two.   June 13, 1995.]

RICHARD L. WALMER, *Appellant*, v. DEPARTMENT OF
LABOR AND DEPARTMENT OF LABOR AND·INDUSTRIES,
*Respondent.*

*Stanley J. Rumbaugh, Rumbaugh, Rideout & Barhett,* for petitioner.

*Michael K. Davis-Hall, Assistant Attorney General,* for respondent.

HOUGHTON, J. — Richard L. Walmer appeals from Superior Court rulings on summary judgment determining (1) that he is barred as a matter of law from receiving benefits under certain provisions of the Industrial Insurance Act, RCW 51 (the Act), and (2) that those provisions of the Act do not violate constitutional principles of equal protection. We affirm.

Although the essential facts are straightforward, this case involves a somewhat extended procedural history. Walmer injured his lower back in an industrial accident in 1978. In November 1978, he filed an accident report regarding his injury. The Department of Labor and Industries (the Department) entered an order allowing medical treatment only, closing the claim on April 16, 1979. Walmer did not appeal that order.

Nearly five years later, Walmer filed an application to reopen his claim due to aggravation of his prior injury. This application was denied on January 27, 1984. Walmer sought reconsideration, which the Department denied in July 1985, by a "remain closed" order.

Walmer appealed to the Board of Industrial Appeals (the Board), which reversed the "remain closed" order and remanded to the Department for further investigation. The Department initially placed the order in abeyance, but on October 14, 1987, it affirmed the "remain closed" order. Walmer did not appeal this determination.

On August 22, 1988, Walmer (acting pro se) wrote a letter to the Department, the Board, and the Governor's office, explaining the effect of his industrial accident on his medical and personal circumstances. In September 1988, the Department informed Walmer that he must petition the Director of Labor and Industries (the Director) for reopening because his claim had been closed for over seven years.

Walmer (through his attorney) filed a petition to waive the seven-year statute of limitations and reopen the claim in December 1988. Walmer asserts the Director failed to respond to this petition. The Department asserts, however,

that it sent a response to Walmer's attorney[1] on January 13, 1989, informing Walmer that he must file an application completed by his attending physician and a statement of facts before action could be taken on his request. The Department asserts it received no reply until September 11, 1989, when Walmer did file an application to reopen his claim. The Department denied this application in November 1989.

Walmer protested this denial, which was placed in abeyance in January 1990. He again appealed. In late February 1991, an industrial appeals judge (IAJ) reversed the order placing the claim in abeyance, and remanded to the Department with directions to provide Walmer with medical and surgical benefits pursuant to RCW 51.36.010; however, the IAJ denied Walmer's claim for further benefits under RCW 51.36.010, because his claim had been closed for more than seven years.

Walmer petitioned for review to the Board, seeking further statutory benefits available under the Act. The Board denied this petition in April 1991.

After Walmer appealed to Superior Court, the Department moved for summary judgment, which was granted. The Superior Court held that Walmer's claims to further benefits were barred as a matter of law under RCW 51.32.160 and that this statute does not violate the Privileges and Immunities clause of the Washington State Constitution, article I, section 12. Walmer appeals these rulings.[2]

In reviewing summary judgment, we engage in the same inquiry as the trial court. RAP 9.12; *Tollycraft Yachts Corp. v. McCoy*, 122 Wn.2d 426, 431, 858 P.2d 503

---

[1]This was Walmer's prior counsel, not counsel herein.

[2]Walmer also requests this court's review of a letter dated July 24, 1992, from the Department to Walmer, allegedly containing an admission his claim is not barred by law. Although we recognize this letter was written after Walmer's motion for summary judgment, we do not read it as an admission and we decline Walmer's request. *See* RAP 9.12 ("On review of . . . summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court").

(1993). Here, our review is de novo, because the material facts are undisputed and the trial court's decision involved only questions of law. *Tollycraft*, at 431.

RCW 51.32.160 provides in pertinent part:

> If aggravation, diminution, or termination of disability takes place, the director may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section . . . or in a proper case terminate the payment: PROVIDED, That the director may, upon application of the worker made at any time, provide proper and necessary medical and surgical services as authorized under RCW 51.36.010. "Closing order" as used in this section means an order based on factors which include medical recommendation, advice, or examination. Applications for benefits where the claim has been closed without medical recommendation, advice, or examination are not subject to the seven year limitation of this section. The preceding sentence shall not apply to any closing order issued prior to July 1, 1981 . . ..

■ Although this statute has been amended several times to change the statutory period for applications, its general effect has remained the same. It allows readjustment or termination of benefits when workers experience aggravation or improvement of their injuries, providing two ways to seek readjustment: (1) application by an injured worker within seven years of the first final closing order, or (2) upon the Director's own motion at any time. RCW 51.32.160. *See generally Smith v. Department of Labor & Indus.*, 8 Wn.2d 587, 589, 113 P.2d 57 (1941); *Botica v. Department of Labor & Indus.*, 184 Wash. 573, 575, 52 P.2d 332 (1935). When a worker's claim has been closed for over 7 years, further applications are barred. *See Botica*, at 575 (applying former three-year limitation); *see generally Hutchins v. Department of Labor & Indus.*, 44 Wn. App. 571, 723 P.2d 18, *review denied*, 107 Wn.2d 1010 (1986).

■ The manner in which the general effect of this statute was affected by the 1988 amendments is addressed in

*Oestreich v. Department of Labor & Indus.*, 64 Wn. App. 165, 822 P.2d 1264 (1992). Prior to the amendments, an applicant could avoid the seven-year limitations period simply by filing a new application, because any reopening restarted the limitations period. *Oestreich*, at 167-68 (citing *Hutchins*, at 573-74). Since the 1988 amendments, however, the limitations period begins to run on the date the first closing order becomes final. *Oestreich*, at 168; RCW 51.32.160.[3] This limitation essentially reflects a legislative determination that "it is reasonable to decide that the condition is stabilized and to deny the claimant the right to file an aggravation claim after" the claim has been finally closed for seven years. *Hutchins*, 44 Wn. App., at 574; *accord Campos v. Department of Labor & Indus.*, 75 Wn. App. 379, 388, 880 P.2d 543 (1994), *review denied*, 126 Wn.2d 1004 (1995).

Walmer argues, however, that once the Director reopened his claim, he became entitled to seek statutory benefits beyond the medical and surgical benefits the IAJ and Board awarded. Walmer relies on *In re Bernard James*, Bd. of Indus. Ins. Appeals, Dec. 04, 394 (1955), in which the Board awarded partial disability to an "over-seven"[4] claimant. As a Board opinion, *James* is not controlling authority. Moreover, *James* is not on point. While *James* interprets a former version of the statute, the 1988 proviso allows the Director to authorize medical and surgical services at any time upon application by the beneficiary, without reopening the claim to other benefits. The proviso adds a limited exception to the seven-year time bar on applications not present in the former statute; it does not allow a beneficiary to claim additional benefits.

Walmer also applies principles of statutory construction to argue the Legislature did not intend the 1988 amendments to limit the type of benefits available to "over-seven" applicants. He notes an absence of language limit-

---

[3]The limitations amendment "does not bar applications for continued medical and surgical treatment", due to the proviso added in the 1988 amendments. *Oestreich*, 64 Wn. App., at 168; RCW 51.32.160.

[4]"Over-seven" claims are those closed for more than seven years.

ing benefits available to "over-seven" claimants, and quotes *Queets Band of Indians v. State*, 102 Wn.2d 1, 5, 682 P.2d 909 (1984) ("Where a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions") (citing *Washington Natural Gas Co. v. Public Util. Dist. 1* , 77 Wn.2d 94, 98, 459 P.2d 633 (1969)). From this he concludes the Legislature did not express an intention to deprive "over-seven" claimants of all but medical or surgical benefits.

Walmer is incorrect for several reasons. First, the import of *Queets* is that the Legislature's express enumeration of medical and surgical benefits in the 1988 proviso creates an inference that it intended to omit other types of benefits; this is the converse of Walmer's position. *See Public Util. Dist. 1*, at 98 ("specific inclusions exclude implication"). Second, while the 1988 proviso does allow the Director to grant necessary medical and surgical benefits any time an aggravation application is made, it does not allow the Director to grant other benefits at any time. As we have noted, such benefits may be awarded only when application is made within seven years from a final closing order.

Walmer also contends that RCW 51.32.160 violates equal protection by irrationally discriminating between "under-seven" and "over-seven" claimants. Walmer concedes that the appropriate standard of review of his equal protection claim is minimal scrutiny. Under this standard, we apply the rational basis test to determine whether:

> (1) the legislation applies equally to all members within a designated class[;] (2) there are reasonable grounds to distinguish between those within and those without the class[;] and (3) the classification is rationally related to [the statute's legitimate] legislative purpose.

*Campos*, 75 Wn. App., at 386. More simply put, "a statutory classification violates the equal protection clause only if it fails to rationally further a legitimate state interest".

*Foley v. Department of Fisheries*, 119 Wn.2d 783, 789, 837 P.2d 14 (1992).[5]

In *Oestreich*, which also involved an equal protection claim, the court held the statute treated all members of the class of injured workers the same with respect to the date of the closing order. *Oestreich*, at 171. Similarly, this court upheld RCW 51.32.160 against an equal protection challenge in *Campos*, because the distinction between claims closed upon a medical recommendation and those closed without such a recommendation is rationally related to the statute's purpose in finalizing claims.

In the present case, Walmer makes several arguments[6] that RCW 51.32.160 violates equal protection. First, he argues the statute on its face arbitrarily distinguishes between "over-seven" applicants, who may receive only medical and surgical benefits under the 1988 proviso, and other "over-seven" claimants, to whom the Director may grant other benefits "upon his or her own motion". Preliminarily, it appears the intent of the statute is to allow the Director to reopen sua sponte in cases of diminution or termination of benefits, rather than aggravation, because the Director is likely to receive workers' applications only in the latter circumstances.[7]

Moreover, the terms of the statute do not treat similarly

---

[5]Under *Foley's* simplified test, a statute would fail to rationally further the State's legitimate interest if it failed to meet either of the first two *Campos* tests. *But cf. Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 478 n.11, 843 P.2d 1056 (1993) (applying three-part test, but indicating single factor test "is more consistent with federal precedent"). Like the court in *Foley*, we reach the same result here under either test.

[6]Initially, Walmer appears to argue the Legislature's choice of a seven-year limitation on applications is "per se" arbitrary. This argument is meritless. *See, e.g., Oestreich*, 64 Wn. App., at 168 (claims limitation period does not affect vested rights).

[7]The Director and self-insurers are empowered to require workers to submit to medical examinations "from time to time". RCW 51.32.110. Employers may request medical certification allowing workers to return to work. RCW 51.32.090(4). Indeed, the entire statutory scheme envisions an ongoing process designed to return workers to jobs whenever possible. *See, e.g.*, RCW 51.32.090, .095. Thus, the Department is not required to rely upon applications from workers regarding diminution or termination of disability.

situated persons differently. As the Department correctly notes, all injured workers, those who apply for readjustment and those whose claims are (assertedly) readjusted sua sponte, are required by the statute to demonstrate entitlement to readjustment. Absent "sufficient medical verification", the Director is powerless to adjust for aggravation. *Cf.* WAC 296-14-400; *Tollycraft*, 122 Wn.2d at 432 ("the burden is on the injured worker to produce some objective medical evidence, verified by a physician, that his or her injury has worsened *since* the initial closure of the claim").

Indeed, RCW 51.32.160 plainly states the Director may readjust compensation only "[i]f aggravation . . . of disability takes place". Nothing on the face of the statute indicates the Director may choose different criteria for making such determinations in cases involving similarly situated workers. Absent contrary evidence, we presume correct execution of the Director's duties. *See, e.g., Somer v. Woodhouse*, 28 Wn. App. 262, 267, 623 P.2d 1164, *review denied*, 95 Wn.2d 1019 (1981). Walmer has not demonstrated that the statute creates distinct classes of similarly situated workers. *See Campos*, 75 Wn. App., at 384-85.

Ultimately, even if we were to find the statute does allow the potential for distinct treatment of similarly situated workers as Walmer argues, his challenge would nonetheless fail. To challenge a statute fair on its face, as here, he must show both that unequal treatment has occurred and also that intentional or purposeful discrimination lay behind such treatment. *See, e.g., Stastny v. Board of Trustees of Cent. Washington Univ.*, 32 Wn. App. 239, 251-52, 647 P.2d 496, *review denied*, 98 Wn.2d 1001 (1982), *cert. denied*, 460 U.S. 1071 (1983). This leads to Walmer's remaining arguments.

Walmer's second argument is that RCW 51.32.160 allows such broad discretion to the Director that "over-seven" claimants are without guidance in determining whether their claims for other benefits will be allowed. He cites no authority for this "as applied" challenge. More-

over, as we have noted, the Director has no such unfettered discretion. Walmer has not shown that the Director has ever exercised discretion in an arbitrary manner. Walmer also has not demonstrated that the Director has ever exercised discretion to sua sponte readjust nonmedical compensation in an "over-seven" claim for aggravation.

■ Rather, Walmer appears to argue the Director is without direction to the point that any exercise of discretion is per se arbitrary.[8] RCW 51.32.160 provides, however, that the Director may readjust compensation upon his own motion "in accordance with the rules in this section". Thus, the Director must comply with the rules provided under RCW Title 51 in determining the eligibility of a claimant.

■ Walmer's third argument[9] undergirds his second. He asserts the "statute purports to give the Director **discretion** to grant or deny disability compensation to 'over-seven' claimants based on evidence which would **require** such benefits" in "under-seven" claims. The statute, however, reads "the director may . . . at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section". RCW 51.32.160. The discretion given the Director is to sua sponte readjust the rate of compensation *in accordance with the rules*, not to "grant or deny disability compensation" arbitrarily.

Walmer's final "as applied" challenge is that the statute violates equal protection because, "absent criteria for rational . . . exercise of discretion, **each and every** time the Director denies disability compensation to an 'over-

[8]Walmer's argument also appears to be a due process claim dressed in equal protection's clothing. To the extent this is so, it is meritless. *See, e.g., Campos*, 75 Wn. App., at 389 (because "(a) claimant has no vested right to make future applications for adjustment based on aggravation", such a due process challenge must fail) (citing *Oestreich*, 64 Wn. App., at 169).

[9]We requested additional briefing on Walmer's equal protection claims, and the following arguments are contained therein.

seven' claimant his action **must** be arbitrary".[10] Walmer's argument misses the point: Under the statute, the Director must comply with the established rules for determining benefit eligibility, no matter whether the Director acts sua sponte or in response to an application. Walmer fails to show that he or anyone else has been treated arbitrarily.

A statute will not be held unconstitutional unless it appears so beyond a reasonable doubt. *State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993); *Campos*, at 384. Walmer has failed to meet this heavy burden.

Affirmed.

SEINFELD, C.J., and ALEXANDER, J. Pro Tem., concur.

Review denied at 128 Wn.2d 1003 (1995).

---

[10]Arguably, this argument proves too much. If every exercise of discretion denying compensation is arbitrary, then every such exercise granting compensation is equally arbitrary; therefore, everyone is treated equally. In fact, however, every exercise of discretion is equally subject to the rules established in the Act for granting or denying benefits.