215 P.3d 1043 (2009)
CASCADE VALLEY HOSPITAL and Public Hospital District Workers Compensation Trust, Appellants
v.
Lori D. STACH and State of Washington, Department of Labor and Industries, Respondents.
No. 61940-3-I.
Court of Appeals of Washington, Division 1.
September 21, 2009.
*1044 Gilbert Stratton, Marne Horstman, Craig Jessup & Stratton PLLC, Tacoma, WA, for Appellants.
William Taylor, Attorney at Law, Everett, WA, James Hawk, Office of Attorney General, Seattle, WA, for Respondents.
ELLINGTON, J.
¶ 1 In this workers' compensation case, we are asked to clarify the authority of the director of the Department of Labor and Industries (the Department) in so-called over-seven claims (that is, claims alleging improvement or aggravation of a work related injury made more than seven years after the claim was first closed).[1] Where aggravation is shown, the director has discretion to reopen over-seven claims for consideration of medical and time loss benefits. A grant of specific benefits must be supported by a preponderance of the evidence.
¶ 2 Here, the director has exercised discretion to reopen Lori Stach's over-seven claim for aggravation of a back injury. This is within the director's powers under the statutes, and we affirm.

BACKGROUND
¶ 3 In 1988, Lori Stach injured her lower back while working for her self-insured employer, Cascade Valley Hospital. Her claim was allowed and she underwent back surgery. Her claim was initially closed in 1991 with an award of category 5 low back impairment. The claim was reopened in 1993, and Stach received conservative care but no surgery. The claim was closed in December 1994 with no additional disability award.
¶ 4 In 2004, Stach's physician recommended physical therapy, and on March 3, 2004, the Department reopened Stach's now over-seven claim for medical benefits only.
¶ 5 On June 2, 2005, Stach's physician requested authorization to perform two back surgeries. Cascade did not object. The surgeries were approved and occurred August 19 and 29.
¶ 6 Stach filed a request for time loss compensation. On February 3, 2006, the director wrote to Stach informing her that she was eligible to receive time loss benefits from the day her physician requested authorization for surgery. He also advised Stach she "may" also be eligible to receive a permanent partial disability award and would be contacted by the claims manager regarding that decision.[2] The Department issued an order on February 9, 2006 reopening Stach's back injury claim "for such additional disability benefits as are authorized by law, effective 06/02/05."[3] Cascade appealed.
¶ 7 In a separate set of events, in January 2001, Stach injured her right knee while *1045 working for a State fund employer. She filed a claim for benefits, which was allowed. She had several knee surgeries, and received time loss compensation beginning March 27, 2001. In 2004, she was found to be unable to return to work at the job of injury and to have no transferable skills. She was referred for vocational services. A training course in Las Vegas was considered, but the organizers refused to become a provider for the Department.
¶ 8 On May 9, 2005, apparently on the basis of Stach's worsened back condition and the unavailability of a local provider for vocational training, the Department issued a final order ending Stach's time loss benefits on the knee claim because "vocational services have ended."[4] Stach protested, and on October 7, 2005, the Department changed its May 9 order to a temporary order and resumed time loss benefits on an interlocutory basis pending resolution of Stach's back claim.
¶ 9 The back claim wound its way through the administrative process upon Cascade's appeal, which alleged the director's February 9, 2006 order violated res judicata and was erroneously issued. Eventually the Board of Industrial Insurance Appeals (the Board) affirmed the order, as did the superior court. Cascade now appeals to this court.

ANALYSIS
¶ 10 The Industrial Insurance Act, chapter 51.52 RCW, provides for de novo superior court review of the Board's determination.[5] The party seeking review bears the burden of showing that the Board's decision was improper.[6] The trier of fact applies the standards set forth in RCW 51.52.115:
The Board's decision is prima facie correct under RCW 51.52.115, and a party attacking the decision must support its challenge by a preponderance of the evidence. On review, the superior court may substitute its own findings and decision for the Board's only if it finds from "`a fair preponderance of credible evidence' that the Board's findings and decision are incorrect."[[7]]
This court reviews the superior court's decision to determine whether substantial evidence supports the factual findings and whether the findings support the conclusions of law.[8] On the latter question, our review is de novo.[9] Cascade does not challenge the findings of fact, which are thus verities on appeal.[10]
¶ 11 Cascade first argues the March 3, 2004 order which reopened Stach's over-seven claim for medical benefits only is res judicata and bars the director's February 2006 order reopening the claim for time loss benefits.[11] This is incorrect.
¶ 12 An order determining disability "is res judicata as to any issue before the department at the time it was entered, but is not res judicata as to any aggravation occurring subsequent to that date."[12] Stach's back claim was reopened in 2004 to authorize physical therapy recommended by her physician. The 2004 order did not address time loss compensation. By June of 2005, her *1046 physician had requested approval of two surgeries, and Cascade made no objection. Aggravation of her injury is thus not disputed. Res judicata does not bar consideration of other benefits available under the statute.
¶ 13 Cascade next contends the February 2006 order was erroneously issued because the statute limits the director's authority in over-seven claims to medical benefits only. This also is incorrect.
¶ 14 The statute provides:
If aggravation, diminution, or termination of disability takes place, the director may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment: PROVIDED, That the director may, upon application of the worker made at any time, provide proper and necessary medical and surgical services as authorized under RCW 51.36.010.[[13]]
¶ 15 The statute has been amended several times to change the limitation period for applications, but its general effect has remained the same: to permit readjustment or termination of benefits when workers experience aggravation or improvement of their conditions.[14] With regard to disability benefits, the statute now provides for readjustment: (1) within seven years of the first final closing order, upon application by an injured worker, or (2) at any time, upon the director's own motion.[15] A proviso establishes the director's authority to approve medical services upon the worker's application at any time. Thus, the over-seven claimant may receive additional disability benefits, as opposed to medical services, only upon the director's "own motion."
¶ 16 Cascade contends, however, that the phrase "at any time upon his or her own motion" applies only during the first seven years after the initial closing order, so the director's authority to grant benefits to over-seven claimants is limited to medical and surgical services and does not extend to disability benefits. Cascade relies upon Walmer v. Department of Labor & Industries.[16]
¶ 17 Walmer was an over-seven applicant who argued that once the director reopens an over-seven claim, the applicant is entitled to seek time loss benefits. Division Two of this court disagreed, stating that the proviso in RCW 51.32.160(1)(a) allows the director to authorize medical and surgical services at any time upon application by the beneficiary, without reopening the claim as to other benefits:
[W]hile the 1988 proviso does allow the [d]irector to grant necessary medical and surgical benefits any time an aggravation application is made, it does not allow the [d]irector to grant other benefits at any time. As we have noted, such benefits may be awarded only when application is made within seven years from a final closing order.[[17]]
We note that the Walmer court addressed the director's authority to act upon an application made by a worker, not when the director is acting sua sponte. In that context, the Walmer court's statement is correct.
¶ 18 Cascade posits that the distinction between these two ways to seek readjustment is a fallacy, as there would be no reason for a claim to come to the director's attention unless benefits are requested by the worker. The Walmer court appears to share this view by stating: "[I]t appears the intent of the statute is to allow the [d]irector to reopen sua sponte in cases of diminution or termination of benefits, rather than aggravation, because the [d]irector is likely to receive workers' applications only in the latter circumstances."[18]
¶ 19 We disagree. The statute clearly authorizes the director to adjust the rate *1047 of compensation upon his or her own motion at any time. The key is not the source of the director's information. Rather, the key is the director's discretion to refuse to reopen in over-seven claims even where aggravation or diminution is demonstrated.[19] The distinction is not a fallacy.
¶ 20 The Washington Supreme Court addressed this issue in Smith v. Department of Labor & Industries[20] more than 70 years ago. The statute at the time provided:
"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the director of labor and industries, through and by means of the division of industrial insurance, may, upon the application of the beneficiary, made within three years after the establishment or termination of such compensation, or upon his own motion, readjust for further application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment."[[21]]
¶ 21 The Smith court had no difficulty concluding that the time limitation applied solely to worker applications, whereas the director could "at any time upon his own motion grant additional compensation to an injured workman, if he finds that there has been, in fact, an aggravation of the injury."[22]
¶ 22 The present language is even more clear that the director may reopen a claim sua sponte "at any time."[23] The statute makes no distinction, for purposes of the director's discretion, between aggravation and diminution or termination of injury. Nor does the statute specify or limit the sources of the director's information. It is unlikely the legislature expected the director to learn of aggravated injuries by way of personal investigation or serendipitous encounters. As in Smith, the director has authority to reopen the claim.
¶ 23 Cascade's next argument concerns the standard of review to be applied to the order. Again relying on Walmer, Cascade argues the appropriate standard of review is preponderance of the evidence. Relying on the Washington Supreme Court's decisions in Smith and Botica v. Department of Labor & Industries,[24] the Department argues the standard is abuse of discretion.
¶ 24 In Botica, the Department denied a worker's application to reopen his claim on grounds of aggravation because it was made more than three years after the claim's closure.[25] The Board affirmed. The superior court also affirmed, but nonetheless ordered the director "to exercise his discretion whether, upon his own motion, he would readjust the compensation."[26] The Supreme Court reversed:
This statute lodges in the director, by the use of the expression "upon his own motion," a certain discretion. If he exercises that discretion, not of his own volition, but by reason of a compulsory judgment entered by the superior court, it is clear that he is not proceeding upon his own motion. The statute giving the director the right to act upon his own motion, the court was in error in entering a judgment directing that he act in response to the mandate of the court.[[27]]
¶ 25 Cascade directs our attention to several statements in Walmer purportedly standing for the proposition that the director's decision to reopen an over-seven claim is not discretionary. But those statements were made in the context of addressing *1048 an equal protection challenge to RCW 51.32.160, not the standard of review of a director's order, and merely clarify that even when acting sua sponte, the director may not grant benefits arbitrarily, but must do so according to the rules in Title 51.[28]
¶ 26 In sum, the director's decision to review an over-seven claim is discretionary. Whether to reopen a claim for additional benefits is also discretionary, provided there is aggravation.[29] Once the director reopens a claim on grounds of aggravation, he or she may grant additional benefits only "in accordance with the rules in this section provided for the same."[30]
¶ 27 The parties agree, and we concur, that the director's grant or denial of specific benefits is to be reviewed under the preponderance standard.[31] The parties disagree as to the nature of the director's February 2006 order. Cascade contends the order amounts to a grant of benefits, whereas the Department maintains the order merely reopens Stach's over-seven claim The order states:
In claims such as yours which have been closed over seven years (or ten years for eye injuries), only the director of the department has the discretion to grant benefits such as time-loss compensation or disability awards. The director has decided to reopen your claim for such additional disability benefits as are authorized by law, effective 06/02/05.[[32]]
On its face, the order does not grant specific benefits, but merely reopens Stach's claim for "such additional benefits as are authorized by law" starting on June 2, 2005.
¶ 28 Cascade points to the director's February 3, 2006 letter to Stach saying he had found her "eligible to receive time-loss compensation benefits effective June 2, 2005,"[33] and to the recommendation of claim adjudicator Barbara Ferry, who recommended "authorization of time loss compensation ... effective June 2, 2005."[34] Cascade contends these documents show that the order reopening the claim is a grant of time loss benefits.
¶ 29 But these documents are not final orders. A determination of eligibility is not an award of benefits. Further, the adjudicator's letter is a recommendation, and the director's letter did not purport to determine the amount of any benefit but rather stated an order would be forthcoming.
¶ 30 Cascade argues that such a two step process is not warranted under the statutory scheme. Because the director may reopen a claim only when there is aggravation, Cascade argues there must be entitlement to benefits, so there is no logical basis to use one order reopening the claim and a second order awarding benefits. But whether aggravation exists and whether (or what) additional benefits may be justified are distinct inquiries. Neither RCW 51.31.160 nor any other statute precludes the director from entering one order addressing both issues, or addressing them separately.
*1049 ¶ 31 The order reopened Stach's over-seven claim but did not grant any benefits, and therefore the Board and the superior court correctly reviewed it for abuse of discretion and found none. We agree. Stach suffered an aggravation of her back injury, requiring two surgeries in August 2005. It was within the director's discretion to reopen her claim for disability benefits under RCW 51.32.160.
¶ 32 Lastly, Cascade argues the director abused his discretion because he exercised it on the untenable grounds of shifting the cost of Stach's claim from the accident fund to self-insured Cascade. Cascade claims the Department erroneously terminated vocational benefits in Stach's knee claim and points out that Stach is paid time loss under her knee claim "pending the outcome of over-seven time loss" on the back claim.[35] However, the order is limited to a finding of eligibility. The question of apportioning Stach's benefits between her two claims was not before the Board or the superior court, and is not before us.
¶ 33 Affirmed.
WE CONCUR: GROSSE and LAU, JJ.
NOTES
[1] See RCW 51.32.160.
[2] Certified Appeal Bd. R. (CABR), Ex. 19.
[3] CABR, Ex. 11.
[4] CABR, Ex. 1.
[5] RCW 51.52.110.
[6] RCW 51.52.115.
[7] Ruse v. Dep't of Labor & Indus., 138 Wash.2d 1, 5, 977 P.2d 570 (1999) (quoting McClelland v. ITT Rayonier, Inc., 65 Wash.App. 386, 390, 828 P.2d 1138 (1992)).
[8] Watson v. Dep't of Labor & Indus., 133 Wash. App. 903, 909, 138 P.3d 177 (2006).
[9] Id.
[10] Willoughby v. Dep't of Labor & Indus., 147 Wash.2d 725, 733 n. 6, 57 P.3d 611 (2002).
[11] For the first time in its reply brief, Cascade argues equitable estoppel and equitable tolling also bar the February 2006 order. We decline to address these arguments. See Stelter v. Dep't of Labor & Indus., 147 Wash.2d 702, 711 n. 5, 57 P.3d 248 (2002) (declining to reach issue not raised before the Board or judicial proceedings below); King v. Rice, 146 Wash.App. 662, 673 n. 30, 191 P.3d 946 (2008) (court of appeals need not consider submissions made for the first time in a reply brief) (Becker, J., dissenting).
[12] Karniss v. Dep't of Labor & Indus., 39 Wash.2d 898, 900-01, 239 P.2d 555 (1952).
[13] RCW 51.32.160(1)(a).
[14] Walmer v. Dep't of Labor & Indus., 78 Wash. App. 162, 166, 896 P.2d 95 (1995).
[15] Id.
[16] 78 Wash.App. 162, 896 P.2d 95 (1995).
[17] Id. at 168, 896 P.2d 95.
[18] Id. at 169, 896 P.2d 95.
[19] See Botica v. Dep't of Labor & Indus., 184 Wash. 573, 575-76, 52 P.2d 332 (1935) (emphasizing discretion of director acting on own motion); see also RCW 51.32.160(1)(a).
[20] 8 Wash.2d 587, 113 P.2d 57 (1941).
[21] Id. at 589-90, 113 P.2d 57 (emphasis omitted) (quoting Laws of 1927, ch. 310, § 4(h)).
[22] Id. at 592, 113 P.2d 57.
[23] RCW 51.32.160(1)(a).
[24] 184 Wash. 573, 52 P.2d 332 (1935).
[25] The statutory period for worker applications at the time was three years. See Laws of 1927, ch. 310, § 4(h).
[26] Botica, 184 Wash. at 575, 52 P.2d 332.
[27] Id. at 575-76, 52 P.2d 332.
[28] Cascade points to the following statements in Walmer: "RCW 51.32.160 plainly states the [d]irector may readjust compensation only `[i]f aggravation... of disability takes place.' Nothing on the face of the statute indicates the [d]irector may choose different criteria for making such determinations in cases involving similarly situated workers." Walmer, 78 Wash.App. at 170, 896 P.2d 95. And in response to the argument that the statute grants the director such broad discretion that any exercise of discretion is per se arbitrary, the court said, "[A]s we have noted, the [d]irector has no such unfettered discretion," and "The discretion given the [d]irector is to sua sponte readjust the rate of compensation in accordance with the rules, not to `grant or deny disability compensation' arbitrarily." Id. at 171, 896 P.2d 95.
[29] See RCW 51.32.160; Smith, 8 Wash.2d at 592, 113 P.2d 57 (director has discretion to reopen a claim at any time upon his or her motion, provided "there has been, in fact, an aggravation of the injury"). Accord WAC 296-14-400 (director has discretionary authority to reopen an asbestos related claim if there is objective evidence of aggravation proximately caused by a previously accepted asbestos related disease).
[30] RCW 51.32.160.
[31] Ruse v. Dep't of Labor & Indus., 138 Wash.2d 1, 5, 977 P.2d 570 (1999).
[32] CABR, Ex. 11.
[33] CABR, Ex. 19.
[34] CABR, Ex. 7.
[35] CABR, Ex. 7.