IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GEORGE HIGGINS,

                Appellant,

       v.

DEPARTMENT OF LABOR AND
INDUSTRIES,

                Respondent.

No. 85045-8-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — George Higgins appeals a trial court's decision affirming the Board of Industrial Insurance Appeals' (board) denial of time loss benefits for the aggravation of Higgins' 1989 workplace injury. The director[1] of the Department of Labor and Industries (L&I or the department) had denied time loss benefits because it found Higgins voluntarily exited the workforce between 2003 and 2005, noting he did not provide contemporaneous medical records to support his claim that he was unable to work during that time due to his industrial injury. Finding no error, we affirm.

---

[1] We will follow the style of the parties' briefing, which refers to the director of the L&I as either "the director" or as "it."

## I. BACKGROUND

### A.    Higgins' injury and aggravation

In 1989, Higgins suffered an industrial injury to his back while at work.  Dep't of Labor & Indus. v. Higgins, 21 Wn. App. 2d 268, 271, 505 P.3d 579 (2022).  While working as an electrician's helper, he lifted two five-gallon paint cans, causing or aggravating a left disc herniation at L4-5.  Id.

In 1992, the department closed Higgins' claim with a category 2 permanent partial disability award.  Higgins, 21 Wn. App 2d at 271.  Higgins unsuccessfully tried to reopen the claim in 1993 and 1994.  Id.

In 2001, Higgins opened an auto repair shop, but closed it in 2003, claiming he was unable to work due to his back injury.  Id.  In 2005, more than seven years after the department closed his claim, Higgins sought to reopen it, requesting time loss benefits or a pension.[2]  Id.  After several subsequent appeals and denials, in January 2017, the director reconsidered and increased his partial permanent disability benefit rating to a category 4.  Id.  However, the director declined to award time loss compensation, stating:

> I am not exercising my discretionary authority to find you eligible for time-loss compensation because you stopped working in 2003 and there is no contemporaneous medical [sic] to support that you stopped working due to your industrial injury.
>
> However, I am exercising my discretionary authority to find you eligible for permanent partial disability benefits in the interest of equity and good conscience, because you had a significant increase in permanent impairment of your lumbar condition.

---

[2] "Over-seven" time loss benefits also are described as wage replacement benefits in the parties' briefing and caselaw.  For the purpose of consistency, we will refer to them as "time loss benefits" or simply "time loss" throughout this opinion.

Id. at 271-272.

Following this order, the director again closed Higgins's claim. Id. at 272.

B.       Higgins' first appeal

Higgins protested the order of the director to the board, which denied the protest and affirmed the director's decision. Id. As part of its affirmance, the board held that it reviewed the director's order under the preponderance of the evidence standard, pursuant to Cascade Valley Hospital v. Stach, 152 Wn. App. 502, 508, 215 P.3d 1043 (2009). Id. Under that standard, the board reversed the director's decision and ordered the department to pay time loss benefits. Id. The department appealed the board's decision to the superior court and argued the proper standard of review was abuse of discretion. Id. The superior court agreed and remanded the case to the board to apply that standard. Id. Higgins then appealed the superior court's decision, and this court affirmed the superior court, finding that the proper standard of review is abuse of discretion. Id. at 278.

C.       Subsequent superior court proceeding

On August 9, 2021, while the appeal was pending in this court, the board went forward and reviewed Higgins' claim under the abuse of discretion standard, and found the director did not abuse its discretion. The board affirmed the director's January 2017 order, again, granting Higgins' increased permanent partial disability benefits and denying Higgins time loss. Higgins appealed that decision to the superior court.

The superior court affirmed the board. In its findings of fact, the court found:

1.2.5 Prior to issuing orders exercising discretionary authority regarding additional benefits, the Director considered a 17-page

3

memorandum reviewing the claim file and medical record, including the facts that claimant stopped working in 2003 and there was no contemporaneous medical record attributing his ceasing work to conditions caused by the industrial injury.

1.2.6 The Director also considered a second 18-page memorandum addressing Mr. Higgins' protest and additional information provided by Mr. Higgins in response to the Director's initial determination . . . [i]nformation provided by Mr. Higgins included his declaration regarding his withdrawal from the workforce in 2003 and why there are no contemporaneous medical records relating the withdrawal from the workforce to his industrial injury . . .

1.2.7 The decision reached by the Director was based on information contained in the Department's claim file as it existed on June 1, 2017 and June 20, 2020.

1.2.8 The Director's discretion was not unreasonable and did not reflect an abuse of discretion.

The court further ordered Higgins to pay a statutory fee of $200, and awarded the department interest from the date of entry of the judgment under RCW 4.56.110. Higgins timely appealed to Division II of this court, which transferred the matter to this division.

## II. ANALYSIS

### A. Background on the applicable substantive law

When a worker is injured on the job, the department gives them "proper and necessary" medical treatment until the condition(s) caused by the injury have reached "maximum medical improvement." RCW 51.36.010(2)(a); WAC 296-20-01002. While the worker's claim is open, they are eligible for a number of benefits, including time loss compensation. RCW 51.32.090. Time loss is meant to replace lost wages while the worker is temporarily unable to work. Id. Once the worker's injury reaches a "fixed" condition (where no further improvement is expected), the

department closes the claim. Franks v. Dep't of Labor & Indus., 35 Wn.2d 763, 766-67, 215 P.2d 416 (1950).

Upon closing the claim, the department determines if the worker has a permanent disability from their workplace injury, and whether such injury is total or partial. See, e.g., RCW 51.32.060(1), (3), & (6); and see RCW 51.32.080. The department requires medical evidence to show the industrial injury proximately caused the disability. Loushin v. ITT Rayonier, 84 Wn. App. 113, 122-23, 924 P.2d 953 (1996).

The department approves a permanent partial disability award when the worker is capable of employment after the injury but loses a permanent bodily function, RCW 51.08.150; RCW 51.32.080. The department awards total permanent disability benefits when the worker's industrial injury proximately renders them permanently incapable of employment. RCW 51.08.160; RCW 51.32.060.

Following these determinations, "[t]he director may readjust a beneficiary's disability benefits under two circumstances (1) by the beneficiary's application if submitted within seven years of their claim closing or (2) at any time upon the director's own motion." Higgins, 21 Wn. App 2d at 274-75. As to the latter, i.e., "over-seven" claims, the director's decision whether to reopen such a claim at all, and whether to consider benefit eligibility in aggravation cases is discretionary. Stach, 152 Wn. App. at 512. Further, a director may reopen an over-seven claim sua sponte "at any time." Id. at 509.

Moreover, we have held that the director has significant discretion regarding

the information it considers when considering whether to open an over-seven claim, stating that "[t]he statute makes no distinction, for purposes of the director's discretion, between aggravation and diminution or termination of injury. Nor does the statute specify or limit the sources of the director's information." Id. at 510-511. In other words, the director has broad authority to reopen a claim for various reasons because "[i]t is unlikely the legislature expected the director to learn of aggravated injuries by way of personal investigation or serendipitous encounters." Id. at 511.

### B. Standard of Review

The director's decision whether to reopen a claim is reviewed for an abuse of discretion. Higgins, 21 Wn. App. 2d at 270. When evaluating whether the director abused its discretion, "[t]he key is not the source of the director's information [informing their decision to reopen an over-seven claim]." Stach, 152 Wn. App. at 510. "Rather, the key is the director's discretion," to reopen or decline to reopen an over-seven claim. Id.

An agency abuses its discretion if its decision is arbitrary and capricious. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A decision is arbitrary and capricious where it is "willful and unreasoning and taken without regard to the attending facts or circumstances." Whidbey Envt'l Action Network v. Growth Mgmt. Hr'gs Bd., 14 Wn. App. 2d 514, 526, 471 P.3d 960 (2020) (quoting PacifiCorp v. Wash. Utils. & Transp. Comm'n, 194 Wn. App. 571, 587, 376 P.3d 389 (2016)). "[W]here there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may

believe it to be erroneous." ITT Rayonier, Inc. v. Dalman, 122 Wn.2d 801, 809, 863 P.2d 64 (1993) (quoting Kendall v. Douglas, Grant, Lincoln, & Okanogan Cys. Pub. Hosp. Dist. 6, 118 Wn.2d 1, 14, 820 P.2d 497 (1991)).

"Once the director reopens a claim on grounds of aggravation, he or she may grant additional benefits only 'in accordance with the rules in this section provided for the same.'" Stach, 152 Wn. App. at 512 (quoting RCW 51.32.160). And this court has held "that the director's grant or denial of *specific* benefits is to be reviewed under the preponderance standard." Id. (emphasis added).

In such findings and decisions, the "Board's decision is prima facie correct under RCW 51.52.115." Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999). Further, the appellate court views the evidence "in the light most favorable" to the party who prevailed at the superior court. Street v. Weyerhaeuser Co., 189 Wn.2d 187, 205, 399 P.3d 1156 (2017) (quoting Bennett v. Dep't of Labor & Indus., 95 Wn.2d 531, 534, 627 P.2d 104 (1981)). The party seeking review bears the burden of showing that the Board's decision was improper. Stach, 152 Wn. App. at 506 (citing RCW 51.52.115).

An appellate court's review of a decision by the department "is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the [superior] court's conclusions of law flow from the findings.'" Ruse, 138 Wn.2d at 5 (quoting Young v. Dep't of Labor & Indus., 81 Wn. App. 123, 128, 913 P.2d 402 (1996)). "Substantial evidence exists if it 'convince[s] an unprejudiced, thinking mind of the truth of that to which the evidence is directed.'" Street, 189 Wn.2d at 205 (quoting

Ehman v. Dep't of Labor & Indus., 33 Wn.2d 584, 597, 206 P.2d 787 (1949)).

Unchallenged facts of an agency's final decision are verities on appeal. Energy Nw. v. Hartje, 148 Wn. App. 454, 459, 199 P.3d 1043 (2009).

C. Discussion

We conclude the director did not abuse its significant discretion or lack substantial evidence when it reopened Higgins' over-seven claim and found him eligible for permanent partial disability, but ineligible for time loss benefits.

In a nutshell, the director determined Higgins was ineligible for time loss because he voluntarily severed himself from the workforce after the closure of his auto shop in approximately 2003, noting that he did not provide contemporaneous medical evidence showing he was unable to work due to his prior industrial injury.

Higgins contends that the director's denial was an abuse of discretion,[3] first, because there is no statutory basis for finding a voluntary severance and, second, because RCW 51.32.090(3)(b) does not require contemporaneous medical evidence.

1.  Further background on severance from the workforce

Time loss is paid to an injured worker to help them cover costs while seeking employment. Hartje, 148 Wn. App. at 466. If, while a worker is temporarily totally disabled, but the director considers them "voluntarily retired and . . . no longer

---

[3] The parties do not appear to distinguish between the standard of review for the director's decision to reopen an over-seven claim (abuse), the decision to determine the scope of that review (abuse), and the decision on the specific type of benefit to be awarded (substantial evidence). We will present the arguments as they were made, but attempt to apply the appropriate standard consistently.

attached to the workforce, benefits shall not be paid." RCW 51.32.090(10).

An injured worker is considered "voluntarily retired" and therefore severed from the workforce if both of these conditions are met:

> (a) The worker is not receiving income, salary or wages from any gainful employment; and

> (b) *The worker* has provided no evidence to show a bonafide attempt to return to work after retirement.

WAC 296-14-100 (emphasis added). But of course, "[a] worker is not voluntarily retired when the industrial injury or occupational disease is a proximate cause for the retirement. Id.

Moreover, if the worker voluntarily removes themselves from the workforce, and *then* their condition becomes aggravated, the original industrial injury is not a proximate cause of *subsequent* lost wages. Hartje, 148 Wn. App. at 466-469 (emphasis added). In such case, the claimant is ineligible for time loss benefits. Id.

Thus, under WAC 296-14-100(1)(b), Higgins would need to present bona fide evidence he attempted to return to work between 2003 and 2005. If he does not, and is also not receiving income, the department considers him voluntarily retired, and thus severed from the workforce. WAC 296-14-100.[4]

    2. Basis for severance from the workforce

---

[4] This court accords deference to the administrative rules promulgated by the agency: "we give substantial weight to an agency's interpretation of the law it administers, especially when the issue falls within the agency's expertise." Southwick, Inc. v. Dep't of Licensing Bus. & Professions Div., 191 Wn.2d 689, 695, 426 P.3d 693 (2018); see also Scott R. Sonners, Inc. v. Dep't of Labor & Indus., 101 Wn. App. 350, 354-55, 3 P.3d 756 (2000). Higgins does not challenge the agency's expertise or any regulation cited in the parties' briefing.

Higgins contends that the record shows he did not voluntarily sever himself from the workforce because there was no evidence Higgins was *not* seeking work. Specifically, Higgins' argument rests on distinguishing Hartje, which is similar to this matter. Id.

In Hartje, the claimant injured her back while working for Energy Northwest. Hartje 148 Wn. App. at 459. She applied for department benefits in 1994 and received permanent partial disability and time loss compensation. Id. The department then closed her claim, noting her condition was stable and she would be employable as of October 2, 1996. Id. Her subsequent appeal was unsuccessful as the department found she was capable of obtaining and performing gainful employment that was more sedentary. Id. at 459-460. In 1999, she petitioned to reopen her claim for aggravation of her 1994 injury. Id. at 460. Hartje testified she attempted to return to work at Energy Northwest but was unable to due to her injury:

> [ ] After my on-the-job injury, I attempted to return to work on two occasions and retained ties with my employer;
>
> [ ] I have not been able to return to work since the 1996 time frame due to the residuals from my industrial injury. I have not voluntarily withdrawn from the work force at any time.
>
> [ ] Had I been able to return to work, I would have done so. It has always been my intent to return to work, if possible.

Id. at 461.

On appeal, Energy Northwest argued, among other things, that Hartje was barred from receiving time loss because she voluntarily retired under RCW 51.32.090(8). Id. at 463. This court agreed, concluding that Hartje voluntarily

retired and noting that there was no evidence that she sought employment before the aggravation of her injury. Id. at 468. Because "Ms. Hartje was capable of obtaining gainful employment as of October 2, 1996, her industrial injury was not a proximate cause for her failure to return to the work force." Id. at 469. Thus, her *intent* to return to work itself was insufficient to show she did not voluntarily sever her employment. Id.

According to Higgins, because there is no evidence he was cleared to return to work nor was there evidence he voluntarily retired, the director abused its discretion by concluding Higgins voluntarily retired. Furthermore, Higgins contends he was unable to return to work due to the residuals of his 1989 industrial injury. Id. at 15. We disagree.

Again, the director has broad discretion to consider any source of information when deciding to open or determine the scope of an over-seven claim. Stach, 152 Wn. App. at 510-511. There is no authority restricting the director from considering the *lack* of evidence as it forms its decision. As we stated in Stach, the key is not the source of information, rather it is the director's discretion. Id. at 510.

In the same way, we must determine, on the one hand, whether Higgins met this burden to show that he did not voluntarily retire and whether, on the other hand, "an unprejudiced, thinking mind" would be convinced "of the truth of that to which the evidence is directed.'" Street, 189 Wn.2d at 205 (quoting Ehman, 33 Wn.2d at 597).

Here, the director reviewed the record, including a report of Higgins' entire

11

administrative record by a claim manager, showing that there was no evidence of Higgins attempting to return to work from 2003-2005 after Higgins' auto shop closed. Furthermore, Higgins' claim was closed in 1992, at which time the director determined Higgins was able to obtain and perform some type of work. The director further noted that Higgins was asked multiple times to provide further information about his medical needs between 2003 and 2005. The director reviewed all these reports including Higgins and his son's testimony regarding his inability to work due to his injury.

When viewing this evidence "in the light most favorable" to the party who prevailed at the superior court (the respondent), we do not find the director's order to reopen the over-seven claim in the way it did was arbitrary and capricious, i.e., "willful and unreasoning and taken without regard to the attending facts or circumstances." Whidbey Envtl. Action Network, 14 Wn. App. 2d at 526 (quoting PacifiCorp, 194 Wn. App. at 587. Nor do we find that Higgins carried his burden that no substantial evidence supported the director's decision as to the specific type of benefit granted.

And, as in Hartje, the director may find Higgins' intent to return to work insufficient to show he made bona fide attempts to seek work. 148 Wn. App at 468. Whether or not we agree that Higgins provided some evidence of his desire or inability to work, "where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous." Kendall,118 Wn.2d at 14 (quoting Abbenhaus v.

12

Yakima, 89 Wn.2d 855, 858-59, 576 P.2d 888 (1978)).

### 3. Contemporaneous medical records

Second, Higgins contends that the director erred by noting the lack of contemporaneous medical records. Under RCW 51.32.090(3)(b), an employee deemed unable to work due to a temporary total disability is supposed to receive a statement from the employer describing the work available to the claimant consistent with their physical ability. If the worker's existing industrial injury is aggravated and a medical professional judges the worker unable to continue the work, the worker's temporary total disability payments are resumed while the worker ceases working. Id.

Higgins contends this statute does not require contemporaneous evidence that he was unable to work between 2003 and 2005. To Higgins, "[c]onjuring requirements that do not exist" is an abuse of discretion inconsistent with the remedial nature of the statute.

As a preliminary matter, an agency may abuse its discretion if it relies upon conjecture, or ignores evidence presented at proceedings. In re Det. of Dyer, 157 Wn.2d 358, 369, 139 P.3d 320 (2006). Conversely, the director holds broad discretion in weighing the facts before it when finding a worker eligible or ineligible for benefits, especially in over-seven claims. Stach, 152 Wn. App. at 510-511. Even considering the remedial nature of the statute, the law vests the director with discretion to award or deny to fulfill the intent behind the act. RCW 51.12.010. Nothing in the statutes Higgins cites says otherwise.

More substantively, as reviewed above, the director's order did not base the

entirety of its reasoning on Higgins' lack of contemporaneous medical records from 2003-2005, but rather mentioned them in passing. Mere reference to a particular piece of evidence (or lack thereof) is not an act that is "willful and unreasoning and taken without regard to the attending facts or circumstances," under the abuse of discretion standard. Whidbey Envt'l Action Network, 14 Wn. App. 2d at 526.

Similarly, Higgins provides no authority for the proposition that merely noting the absence of some information can be fatal to the director's decision and/or allows him to carry his heavy burden here. Where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).

Moreover, it is not unreasonable for the director to note that there were no records before it of Higgins seeking employment or even medical care. It is within the director's discretion in this context to note the lack of contemporaneous evidence of Higgins' aggravated injury, regardless of whether the director is expressly permitted to do so in any statute or regulation. Again, no authority Higgins cites says otherwise.

### III. CONCLUSION

We affirm the superior court.

_Díaz, J._

WE CONCUR:

_Feldman, J._          _Dwyer, J._